**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| SHEILA A SKAGGS,              ) | |
|          ) | |
|        Plaintiff,      ) | |
|          ) | |
|          v.          ) | Case No. 1:21-cv-02406-TWP-MJD |

SHEILA A SKAGGS,      )
           )
       Plaintiff,    )
           )
         v.      )   Case No. 1:21-cv-02406-TWP-MJD
           )
FERRELLGAS, INC.,      )
           )
       Defendant.   )
           )
FERRELLGAS, INC.,      )
           )
      Thirty Party Plaintiff,  )
           )
         v.      )
           )
FAURECIA USA HOLDINGS, INC.,  )
           )
      Third Party Defendant.  )
           )
FAURECIA USA HOLDINGS, INC.,  )
           )
       Counter Claimant,  )
           )
         v.      )
           )
FERRELLGAS, INC.,      )
           )
       Counter Defendant.  )

**ENTRY ON DEFENDANT/THIRD-PARTY PLAINTIFF FERRELLGAS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT AGAINST FAURECIA USA HOLDINGS,**
**INC., AND ON THIRD-PARTY COUNTER PLAINTIFF AND THIRD-PARTY**
**DEFENDANT FAURECIA USA HOLDINGS, INC.'S**
**CROSS MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Ferrellgas, Inc.'s ("Ferrellgas") Motion for Summary

Judgment (Filing No. 143) and Faurecia USA Holdings, Inc.'s ("Faurecia") Cross-Motion for

Summary Judgment (Filing No. 151).  For the following reasons, Ferrellgas' Motion is **denied**, and Faurecia's cross Motion is **granted in part and denied in part**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the non-moving party for each respective motion.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This case involves multiple parties with varying claims and a plethora of facts.  This background section is not intended to provide a comprehensive explanation of all the facts of this case, rather, it only discusses those relevant to these two motions.

### A.     Procedural Background

On August 5, 2021, Plaintiff Sheila A Skaggs ("Skaggs") initiated this lawsuit in the Circuit Court of Bartholomew County, Indiana, against Ferrellgas because of injuries she sustained from a liquid propane tank explosion (Filing No. 1-1). Skaggs asserted claims of negligence under tort law and is seeking damages.  *Id*.  On September 9, 2021, Ferrellgas removed the case to this court. (Filing No. 1.)  On April 29, 2022, Ferrellgas filed a Third-Party Complaint adding Faurecia to the lawsuit (Filing No. 36).  In its Third-Party Complaint, Ferrellgas asserts claims of declaratory relief, contribution, and equitable and contractual liability against Faurecia.  *Id.* at 5-7.  On July 1, 2022, Faurecia filed a Third-Party Counter-Claim against Ferrellgas asserting claims of negligence, breach of contract, and declaratory relief (Filing No. 43 at 4-6).

Ferrellgas filed a motion for summary judgment against Faurecia (Filing No. 143), and Faurecia responded in opposition and asserted a cross-motion for summary judgment. (Filing No. 151).  Ferrellgas' replied in support of its summary judgment motion and in opposition to Faurecia's

cross-motion. (Filing No. 164). Faurecia then filed a surreply June 23, 2023 (Filing No. 168). On December 1, 2023, oral argument was held on the parties' various motions.

### B.   **Factual Background**

#### 1.   **The Contractual Agreements**

Faurecia is an automotive technology supplier, located in Columbus, Indiana (Filing No. 1-1 at 5). Ferrellgas is a nationwide distributor of liquid propane gas. The business relationship between Ferrellgas and Faurecia began July 20, 2016, when the parties entered into a National Propane Supply Agreement (the "Supply Agreement") (Filing No. 144-1). Under the terms of the Supply Agreement, Ferrellgas (as the Seller) agreed to provide Faurecia (as the Buyer) with propane pursuant to the quantities expressed in the purchase order. *Id.* at 5. The Supply Agreement makes no mention of propane dispensing equipment; the agreement was to supply propane only (Filing No. 153-1 at 13). The Supply Agreement also has an indemnification clause stating the following:

> Buyer [Faurecia] will indemnify Seller [Ferrellgas], its subsidiaries, and their respective employees, officers, directors, agents or representatives, against third-party claims for injury or death to persons, property damage, economic loss, and any resulting damages, losses, costs, and expenses (including reasonable legal fees), if and to the extent caused by Buyer's [Faurecia] negligent acts or omissions.

*Id.* at 10.

A year later, on August 24, 2017, Ferrellgas and Faurecia entered into a Dispenser Agreement, this time, for the supply of propane *and* propane dispensing equipment (Filing No. 144-2). Ferrellgas provided a dispenser that was equipped with an 18-foot hose (Filing No. 144-3 at 58). Prior to the execution of the Dispenser Agreement, the dispenser on site at Faurecia was manufactured by a different supplier, Praxair (Filing No. 153-3 at 2). Under the terms of the

Dispenser Agreement, Faurecia (as the Reseller) and Ferrellgas (as the Company) agreed to the

following:

> **5. Repairs and Maintenance.** Reseller shall take all reasonable precautions to protect the Equipment from damage and decrease in value. Reseller shall routinely inspect the Equipment and cease use of any Equipment that is defective or in substandard condition and shall immediately notify Company thereof. …
> ….
>
> **7. INDEMNIFICATION.** Each party ("Indemnitor") shall indemnify and hold harmless the other party and any of the other party's employees, contractors and agents (collectively the "Indemnitees"), from and against any and all claims, losses, damages, causes of action, suits, liability, and judgments of every kind and character, including all expenses of litigation, court costs, and reasonable attorneys' fees, for bodily injury, death, or damage to or destruction of property, that Indemnitees may sustain, to the extent proximately caused by the Indemnitor's employees, contractors or agents negligence or unlawful conduct. In cases of joint or concurrent negligence, each party shall be responsible to the extent of its respective negligence. …
>
> **8. SAFETY.** Company agrees to provide Reseller and Reseller's designated employees safety training materials for the proper handling, storage, and transportation of propane, and to make available to Reseller an adequate supply of the Company's Propane Safety Plan brochure (form OPR-1171 or its replacement). … Reseller shall (i) complete all safety training required by Company and ensure all employees of Reseller who handle or sell propane are properly trained before handling propane (all such training shall be documented); (ii) provide each customer or purchaser of propane the Company's Propane Safety Plan brochure; (iii) perform all propane-related activities in accordance with NFPA 58 and all federal, state, and local codes; (iv) warn every customer or purchaser of propane by directing attention to the safety warning in the written warnings given to the customer/purchaser; (v) have on each cylinder sold/exchanged to a customer or purchaser of propane the Company's Portable Cylinder Warning Label (form FG4115 or its replacement); and (vi) warn customers or purchasers of propane about the hazards of storing, using, and transporting propane. Reseller specifically covenants to Company that it will not allow anyone to dispense propane who has not been trained to do so safely. …

(Filing No. 144-2 at 1, 2).

> **2.      Training Provided by Ferrellgas and Faurecia**

Under the terms of the Dispenser Agreement, Ferrellgas was responsible for training select

Faurecia employees and those Faurecia employees were then responsible for training the rest of

Faurecia's employees on how to use the dispensing equipment (Filing No. 147-2 at 35). This agreement between Ferrellgas and Faurecia was much like a train-the-trainer program. *Id.*

Ferrellgas' employee, Rodney Stepleton ("Stepleton"), provided training to Faurecia employees on August 28, 2017 (Filing No. 144-5 at 1). The employees present were Laurie Chambers ("Chambers"), Chester Applegate, and Thomas Carpenter *Id.* Stepleton testified that he provided hands-on training regarding "Dispensing Propane Safely" and "bobtail key-loop procedure." (Filing No. 144-6 at 3.) But there was no handout or paperwork provided to Faurecia staff on the bobtail key loop training. *Id.* at 6. A key-loop is an elastic loop that attaches to a forklift key. *Id.* During the training, Stepleton explained that when a key-loop is used properly, it prevents an employee from inadvertently driving a forklift away while it is still connected to the hose because the key to the forklift would be locked until the nozzle and must be retrieved and used to start the forklift. *Id.*

Faurecia employees dispute the level of the training provided by Ferrellgas as testified about by Stepleton (Filing No. 152 at 4). Chambers testified that she received no hands on training from Stepleton; she was simply handed a training packet (Filing No. 153-5 at 2, 3). The training manual provided by Stepleton contained ten chapters. *Id.* at 5-77. Within the training manual is mention of an emergency shutdown device that should be activated in the event of uncontrolled propane leaks and fires. *Id.* at 16. However, the manual does not specify where the shutdown device is located or how to activate it. *Id.*

Chapter 3 of the training manual refers to various shutdown components. *Id.* at 20. However, these shutdown components are not specific to the configuration of dispenser equipment at Faurecia. *Id.* But Chapter 3 does make mention of an emergency break-away device. The manual states "[a]n emergency break-away device… is designed to provide protection in case of a

pull-away by stopping the flow of gas if a customer drives away with the hose attached." *Id.* at 19.  This section does not state the break-away device will not work if the hose is tangled.  *Id.*

Other parts of the training manual address the dispensing of propane and refueling of forklift cylinders.  *Id.* at 22-23, 47-48.  The process described is quite simple to understand.  The employee unlocks the cabinet where the hose and valves sit, slowly opens the valves, inspects the valves, dispenses the propane, closes the valves, stores the hose, and then closes and locks the cabinet.  *Id.* at 22-23.  Despite the extensive manual, there is no mention of key-loops, where to properly store the hose, or how to avoid the hose tangling.

Chambers relayed all the information she received from Ferrellgas to the Faurecia employees she trained, including distribution of the training manual (Filing No. 153-5 at 3).  Faurecia contends the insufficiency of Ferrellgas' training is what contributed to the accident.  Faurecia expert, Richard Rambacher, opines the accident was caused by Ferrellgas' failure to train Faurecia employees to be trainers (Filing No. 153-8 at 4).  Nine Faurecia employees reported not knowing what a key-loop was.  *Id.* at 9-10.

Ferrellgas contends they thoroughly trained the designated Faurecia representatives and any subsequent training that was insufficient was the fault of Faurecia.  In support of its argument, Ferrellgas designates deposition testimony from Faurecia employee, Dave Ganote ("Ganote") (Filing No. 144-10).  Ganote testified that Ferrellgas trained him on the key-loop, he understood the importance of a key-loop, Ferrellgas provided him with a key-loop, and he used the key-loop every time.  *Id.* at 2, 3, 4.

Faurecia employee, Anthony Jordan Smith ("Smith"), reports a completely different training experience.  Smith was trained September 22, 2016 by Faurecia; prior to the Ferrellgas dispenser being installed at Faurecia (Filing No. 144 at 10).  The training in 2016 was the only

6

training he received (Filing No. 144-8 at 2). During that training, Smith was taught about liquid propane gas dispensing. *Id.* at 2. In 2019, Smith did not receive any training on propane dispensing and Smith does not recall Faurecia having annual refresher training on using dispensing equipment. *Id.*  He was not trained on the use of a manual safety at the propane dispenser, emergency shutoff procedures, pull-away incidents, or what a vapor cloud or propane leak would look like. *Id.* at 4, 15-16.

### 3.   **The Incident**

On November 20, 2020, Faurecia employee Smith was operating a forklift at the Faurecia facility (Filing No. 144-9 at 5). Smith parked his forklift, left his keys in the ignition, and began screwing the nozzle into the dispenser.  (Filing No. 144-8 at 12.)  While the dispenser was being filled up, Smith walked away to talk to another coworker.  *Id.* at 13.  At the time of fueling, the hose was wrapped around the mounting station (Filing No. 144-9 at 5). When Smith was finished talking with the co-worker, he returned to the forklift (Filing No. 144-8 at 13). Smith did not disconnect the hose prior to getting on the forklift and proceeded to drive his forklift away from the dispenser equipment with the hose still attached. *Id.* at 14.  A few moments later, Smith heard a hissing noise coming from the equipment.  (Filing No. 147-7 at 14).  Smith realized propane was leaking from the dispenser, but he continued to pull away to go get a co-worker and planned to come back to the dispenser. *Id.* Smith did not stop or turn off the Emergency Shut-off valve. This "pullaway" event ruptured the hose and released propane.

After Smith pulled away, Skaggs drove her forklift up to the fueling station to refill her tank (Filing No. 1-1 at 6).  While attempting to refuel her tank, an explosion ignited the liquid propane gas that leaked from the torn hose.  *Id.*  Skaggs sustained burn and other injuries from the explosion.  *Id.*

7

Ferrellgas expert Jean L. McDowell opines that because the hose was wrapped around the mounting station, the force from the forklift being driven away was applied to the hose, instead of the base, causing the hose to split in half (Filing No. 144-9 at 5). If the hose was not wrapped around the mounting station, the hose would have torn at the natural breaking point which would have prevented the escape of liquid propane gas. *Id*. No Faurecia employee activated the emergency shutoff, which would have stopped the leaking gas (Filing No. 148-3 at 6-10).

## II.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory

statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The fact the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. With cross motions, the court is required to "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002).

## III.   DISCUSSION

Before the Court is Ferrellgas' Motion for Summary Judgment (Filing No. 143) and Faurecia's Cross-Motion for Summary Judgment (Filing No. 151). Ferrellgas contends Faurecia was negligent and therefore seeks declaratory relief, contribution, and indemnity pursuant to both the Supply Agreement and Dispenser Agreement (Filing No. 144). Faurecia contends Ferrellgas

was negligent and seeks relief under negligence, breach of contract, and declaratory relief (Filing No. 152). Faurecia also cross-motions for summary judgment seeking judgment in its favor on Ferrellgas' claims of indemnity under the Supply Agreement. *Id.* The success of each parties' motion is dependent upon a finding of liability, so the Court will first address the issue of negligence and then proceed to the claims specified in the summary judgment motions.

### A.   <u>Negligence</u>

Summary judgment is generally inappropriate in negligence cases. *Tibbs v. Huber*, 668 N.E.2d 248, 249 (Ind. Ct. App. 1996). Negligence cases are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. Ct. App. 2004). Nevertheless, a defendant is entitled to summary judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id.* at 385. Common law material facts negate at least one element of the plaintiff's claim. *Id.* at 385. Common law negligence claims require the plaintiff to establish each of the following elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff that was proximately caused by the defendant's breach. *Id.*

### 1.   <u>Duty Owed by Both Ferrellgas and Faurecia</u>

Whether a duty exists is a question of law resolved by the court. *Illinois Bulk Carrier v. Jackson*, 908 N.E.2d 248, 253 (Ind. Ct. App. 2009). It is well-established at common law that control equals responsibility. *See Stropes ex rel. Taylor v. Heritage House Children's Ctr. Of Shelbyville, In.*, 547, N.E.2d 244, 252 (Ind. Ct. App. 1989). Both employers and suppliers owe a duty of care to the employees they manage or the individuals who use their products. *Jeffords v.*

*BP Products North America Inc.*, 963 F.3d 658, 661-62 (7th Cir. 2020); *S.E. Ind. Natural Gas Co. v. Ingram*, 617 N.E.2d 943, 951 (Ind. Ct. App. 1993).

Employers have a duty to use reasonable care to provide its employees with a reasonably safe workplace, including safe equipment. *City of S. Bend v. Rozwarski's Est.*, 404 N.E.2d 19, 21 (Ind. Ct. App. 1980); *Branscomb v. Wal-Mart Stores East, L.P.*, 165 N.E.3d 982, 987 (Ind. 2021) ("an employer may not delegate its duty to keep the premises safe for its own employees.") Suppliers of chattel owe a similar duty. *Palmer & Sons Paving, Inc., v. N. Ind. Pub. Serv. Co.*, 758 N.E.2d 550 (Ind. Ct. App. 2001). Gas companies who participate in the selling and distribution of gas have a duty to "use reasonable care in the distribution of [such] gas" because it is "a dangerous instrumentality." *Id.* at 554. A gas company's duty extends to "the public generally, its customers, and third persons who might reasonably be foreseen to be affected by the utility's provision of the service." *S.E. Ind. Natural Gas Co. v. Ingram*, 617 N.E.2d 943, 951 (Ind. Ct. App. 1993); *see also Heritage Operating, L.P. v. Mauck*, 37 N.E.3d 514, 522 (Ind. 2015) (noting it is reasonably foreseeable that a person present on the property where a gas tank is located could be injured by any misuse of undetected defect).

Faurecia does not dispute that they owed a duty to Skaggs, as their employee (Filing No. 152 at 9). However, Ferrellgas argues they did not owe a duty to Skaggs (Filing No. 165 at 7). Ferrellgas contends that based on the Dispenser Agreement, Faurecia was required to notify Ferrellgas of any unsafe equipment and their failure to notify placed responsibility of inspection and maintenance on Faurecia (Filing No. 165 at 8). This argument does not address any duty of care that exists solely based upon the distribution of gas and installation of the related equipment. As illustrated in *Beta*, in Indiana, one who has complete control over the design and installation of a specific item cannot escape liability merely because someone else controlled the premises at the

time of the accident.  *See Beta Steel v. Rust*, 830 N.E.2d 62, 70 (Ind. Ct. App. 2005).  In *Beta*, an employee was injured, and ultimately killed, when they stepped on an electrical control cabinet at work that was designed and installed by a third party.  *Id.* at 71.  The court held that although the employee was injured at the employer's site and the employer controlled how the work was done, the third party still owed a duty to the employee.  *Id.*

The undisputed facts demonstrate, at a bare minimum, Ferrellgas supplied liquid propane gas to Faurecia and was responsible for the safe installation of the liquid propane equipment. Ferrellgas had complete control over the design and installation of the 1000-pound liquified propane tank, and refueling station, which was equipped with the hose that Skaggs argues contributed to the propane leak. The undisputed facts also demonstrate that Skaggs was an employee of Faurecia and therefore was expected to use the propane equipment provided.  Thus, as a distributor of gas, Ferrellgas owed Skaggs a general duty to use reasonable care in the installation of the liquid propane tank equipment.

Additionally, Ferrellgas also had a duty to maintain and repair the liquid propane equipment.  Ferrellgas attempts to place this duty onto Faurecia, relying on the Dispenser Agreement but that is improper.  In determining whether a party owes a duty, the court looks to existing relationships.  In *Rhodes*, where plaintiff and defendant had a contract outlining the relationship between the parties, the court found summary judgment improper, holding a contract cannot establish who owes a duty, rather, duty must be determined by who is in control of the premises when the accident occurs.  *Rhodes*, 805 N.E.2d at 385.

To the extent Ferrellgas argues the Dispenser Agreement with Faurecia supplanted its common law tort duty to Skaggs, it cannot do so.  "A person cannot limit his or her tort duty to third parties by contract."  *Rhodes*, 805 N.E.2d at 385.  On one hand, the Dispenser Agreement

states Faurecia was responsible for inspection and notification of maintenance needs, but on the other hand, once notification occurs, Ferrellgas was responsible for repair and maintenance of the equipment (Filing No. 144-2).  Ferrellgas maintained control of the dispenser equipment.

The Court finds that both Ferrellgas and Faurecia owed Skaggs a duty of care in the installation and maintenance of the dispenser equipment at issue in this case.  Therefore, summary judgment will turn on whether there are genuine issues of triable fact as to breach of duty by either party and proximate cause.

**2.**     **Breach of Duty**

Whether a party breached its duty is a question of fact.  *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. Ct. App. 2003).  Moreover, "whether a particular act or omission is a breach of duty is generally a question of fact for the jury.  It can only be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Id.*

Courts are hesitant to grant a motion for summary judgment in negligence cases where the designated evidence shows disputed facts, no matter how irrelevant to the harm the evidence may appear. *See Briesacher v. Specialized Restoration and Const., Inc.*, 888 N.E.2d 188, 194 (Ind. Ct. App. 2008).  In *Briesacher*, where an employee injured themselves while laying decking for a roof after a previously installed rebar came loose, the court found summary judgment for the contractor improper as to breach because the employee's designated evidence claimed the contractor failed to use reasonable care in the installation of the rebar. *Id*.

The designated evidence in this case presents several disputes over material facts. First, both parties dispute who was responsible for training.  Ferrellgas designates the deposition testimony of Faurecia's corporate representative, Ruth Means ("Means") (Filing No. 144-3).  The deposition testimony states the following:

Q   So we'll get into some of the documentation, but just to shortcut a little bit, you understand that Faurecia, as an employer, is responsible for training its employees on how to safely do their job, including safely refueling forklift cylinders before this accident?

A   Yes.

….

Q   But Faurecia was responsible, as the employer, for ensuring that its employees were properly trained to handle propane; correct?

A   Correct.

….

Q   All right. So just briefly, the next page, page 3 of this exhibit, talks about Establish Authority and Responsibility. It says "Management has the sole responsibility for adopting complete policies, implementing effective procedures, and appointing properly trained and empowered individuals to provide daily supervision for each of the stated human activities." Did I read that correctly?

A   Yeah.

Q   Do you agree with that statement?

A   Okay. Yes, I do.

(Filing No. 144-3 at 2, 26-27, 43).

Ferrellgas contends this testimony is an admission that Faurecia was "solely" responsible for training its employees (Filing No. 144 at 8). The Court disagrees. In the same deposition, Means testifies that although Faurecia was responsible for training its employees, Ferrellgas was responsible for training Faurecia and for passing training on to other employees (Filing No. 144-3 at 41; Filing No. 153-2 at 4). It is clear from the deposition testimony both parties had a role in the training of Faurecia employees. Although Ferrellgas alleges their employees provided extensive hands-on training to Faurecia employees, the evidence possibly suggests otherwise. Some Faurecia employees testified that they received no hands-on training from Ferrellgas and

instead were only handed a training packet (Filing No. 153-5 at 2).  Any failure, on behalf of Ferrellgas or Faurecia, to use reasonable care in training would result in a breach.

Second, the parties materially dispute whether the training provided by Ferrellgas to Faurecia was sufficient. Faurecia contends the training provided by Ferrellgas omitted several important instructions, including how to operate a key-loop.  Ferrellgas contends the training they provided was thorough and it was Faurecia's subsequent trainings that created a discrepancy of knowledge between Faurecia employees.

Lastly, there is a dispute whether Ferrellgas used reasonable care in the installation of the dispenser equipment.  Ferrellgas contends the liquid propane dispensing hose met OSHA standards and was not too long under industry standards (Filing No. 144 at 22). Ferrellgas expert, Jean McDowell, opines the hose "met all applicable codes and standards," the hose "was installed in a manner that complied with Industry standards," and the 18-foot hose "compl[ied] with code requirements regarding exposures" (Filing No. 144-12 at 15). However, Faurecia designates evidence that the hose may have been in compliance, and the cabinet was not configured in a way for proper storage of the hose (Filing No. 152 at 10).  Multiple Faurecia employees testified that the hose did not fit well into the cabinet (Filing No. 153-6 at 2).

The Court finds there are genuine issues of material fact regarding whether Ferrellgas used reasonable care in the installation of the dispenser equipment and whether Ferrellgas and Faurecia used reasonable care in the training of employees, that preclude the entry of summary judgment as to breach.

**3.  <u>Proximate Cause</u>**

The Court also finds there are genuine issues of material fact regarding the proximate cause of Skaggs' injuries and, potentially, the comparative fault of Ferrellgas and Faurecia.    In

determining whether an act is the proximate cause of an injury, the courts consider "whether the injury was a natural and probable consequence of the negligent act, which in light of the attending circumstances, could have been reasonably foreseeable or anticipated." *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996). "When determining proximate cause, foreseeability is based on hindsight, and accounts for the circumstances that actually occurred." *Id.* If the harm was a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may still be held liable even though independent agencies intervened between his negligence and the ultimate result. *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 520 (Ind. Ct. App. 1994). Thus, reasonably foreseeable acts do not break the chain of causation and liability still rests with the original wrongdoer. *Id.* These types of questions concerning proximate cause particularly lend themselves to a decision by jury. *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983).

When the facts of a case do not suggest one clear act as the sole cause of injury, summary judgment is improper. *See Rhodes*, 805 N.E.2d at 388 (denying defendants' motion for summary when actions of the contractor, employer, and employee could have all equally contributed to plaintiffs' death). Only where it is clear the injury was not foreseeable under the circumstances and that the imposition of liability upon the defendant would not be justified, may the determination of proximate cause be made as a matter of law. *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind. Ct. App. 2001). In *Hassan v. Begley*, where a doctor was sued for failing to order a NG tube for a patient, the court granted summary judgment for the doctor holding improper placement of a NG tube by two different nurses was the superseding cause to the patient's death. *Hassan v. Begley*, 836 N.E.2d 303, 308-09 (Ind. Ct. App. 2005). The court held it was

16

unforeseeable, from the doctor's standpoint, that "trained and experienced nurses would misplace a NG tube on two occasions." *Id.* at 309.

Here, there are several disputed facts material to the inquiry of proximate cause and whether there was any superseding cause. Both parties agree Faurecia employee, Smith, pulled away from the liquid propane gas dispensing station with the hose still attached to the forklift, rupturing the fill hose, allowing liquid propane gas to leak from the tank. However, as in *Rhodes*, the evidence does not show with certainty that the actions of Faurecia, and its employee, Smith, were the only dangers contributing to the incident.

Ferrellgas argues several causes of Skaggs' harm. First, Ferrellgas argues that Faurecia was responsible for training all employees thoroughly on the use of refueling stations and key loops. Second, Ferrellgas argues Faurecia was required to notify Ferrellgas if the hose was unsafe and was to notify of any potentially dangerous conditions with the equipment and they did not. Lastly, Ferrellgas argues Smith could have been more attentive, ensuring the hose was disconnected from the forklift prior to pulling off. Indeed, the designated evidence supports these arguments.

However, a reasonable inference that may be drawn from the evidence designated by Faurecia is that training provided by Ferrellgas to Faurecia was insufficient, installation of the hose was unsafe, and Ferrellgas was put on notice of the equipment's potentially dangerous conditions during the previous two pull-away incidents and failed to remedy it. Faurecia's expert John M. Agosti opines that Ferrellgas took several improper steps when installing and maintaining the liquid propane dispenser equipment (Filing No. 150-2 at 3-6). So, while it is undisputed Smith's driving away with the hose attached to the forklift was a factor in causing the propane leak, there is evidence that it was not the only danger. Instead, a reasonable inference can be made that the

actions of Smith, Faurecia, and Ferrellgas all contributed to the propane leak that ultimately led to the explosion which harmed Skaggs.

Furthermore, unlike the circumstances in *Hassan*, the designated evidence lends itself to multiple inferences regarding foreseeability. *See Hassan*, 836 N.E.2d at 308-09. Ferrellgas contends the actions by Faurecia employee Smith, who was improperly trained by Faurecia, were unforeseeable and thus a superseding cause, severing the chain of proximate cause. Based on the evidence designated by Skaggs, Ferrellgas could have foreseen Skaggs being injured from a pull-away incident as they were aware most Faurecia employees were not trained on key loops and two pull-away incidents had happened previously, which they notified Ferrellgas of.

Our appellate courts have long held that issues of breach and proximate cause are matters best resolved by the trier of fact. The designated evidence does not provide a clear answer as a matter of law, and a reasonable jury could find for either party on these issues which preclude the entry of summary judgment as to negligence. Therefore, summary judgment is **denied** as to negligence.

**B.      Ferrellgas' Motion for Summary Judgment (Filing No. 143)**

Ferrellgas is asking this Court to grant summary judgment on its Third-Party Complaint finding that they are entitled to declaratory relief, contribution, and indemnification from Faurecia (Filing No. 144 at 3). Ferrellgas argues "the plain language of the two contractual agreements between Ferrellgas and Faurecia obligate Faurecia to indemnify Ferrellgas from and against Plaintiff's claims, including the payment of Ferrellgas' attorneys fees and other defense costs." *Id*. They contend there is no genuine dispute as to any of the facts necessary to establish Faurecia's liability to Ferrellgas for contractual indemnification, so Ferrellgas is entitled to summary

judgment as to liability on its Third-Party Complaint against Faurecia, with the amount of damages to be determined later. *Id.*

The general rule is that decisions about indemnity should be postponed until the underlying liability has been established. *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *Travelers Ins. Cos. v. Penada Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) ("[T]he determination of whether [defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated."); *Coca-Cola Bottling Co.-Greshen, Ind. v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind. 1983) ("[O]ne of the elements of a claim for indemnity is that the claimant has paid or been compelled to pay a judgment recovered by the injured person.").  While the Seventh Circuit may deviate from this general rule, it is only done in rare circumstances. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992).  Such circumstances include when there is a "probabilistic injury." *Id.* at 680-81.  A probabilistic injury is one where a party would be liable for an amount it could not afford. *Id.*

Because an indemnity agreement is intended to "shift the financial responsibility to pay damages from the indemnitee to the indemnitor," an allocation of fault is required. *See Mead Johnson & Co. v. Kenco Grp., Inc.*, 899 N.E.2d 1, 3 (Ind. Ct. App. 2009) (reversing the superior court's grant of summary judgment finding allocation of fault is a material fact that precludes summary judgment in indemnification cases.).

In this case, the general rule against issuing a declaratory judgment before liability is resolved applies.  First, no probabilistic injury has been shown.  Second, whether Faurecia must indemnify Ferrellgas will depend on the underlying facts and a finding of liability through trial. Under both the Supply Agreement and Dispenser Agreement, Faurecia is responsible for damages only to the extent caused by their negligence.  At this stage of the proceedings, there has been no

finding of liability and given the disputed facts, this Court is unable to determine the probability of success for either party. Since this Court has not determined a basis for liability, an adjudication about indemnification would be premature. Thus, Ferrellgas' request for summary judgment for declaratory relief, contribution, and indemnity is **denied**.

## C.   **Faurecia's Motion for Summary Judgment (Filing No. 151)**

Faurecia is seeking summary judgment on Ferrellgas' claims of indemnity under both the Supply Agreement and the Dispenser Agreement. Faurecia contends they are entitled to dismissal of Ferrellgas' claims for indemnity because the claims are premature (Filing No. 152 at 2). Additionally, the Supply Agreement does not provide for indemnity generally because injuries arising from a dispenser were not foreseeable. *Id.*

As stated above, summary judgment as to the indemnification clauses is premature. Any allocation of fault by the trier of fact presents a genuine issue of material fact. *See Mead Johnson*, 899 N.E.2d at 3. However, a ruling on indemnification under the Supply Agreement does not rest on a finding of negligence.

The essential elements of a breach of contract are the existence of a contract, the defendant's breach, and damages. *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind. Ct. App. 2000). A party is not required to compensate the injured party for injuries that were not foreseeable at the time the contract was made. *Id.* The test for measuring damages is foreseeability at the time of entry into the contract, not facts existing and known to the parties at the time of the breach. *Id.*

Faurecia entered into the Supply Agreement with Ferrellgas on July 16, 2016. Although the Supply Agreement contained an indemnity provision, this provision only covered accidents resulting from a propane only incident. At the time the parties entered into the Supply Agreement,

Ferrellgas was only supplying propane. Dispenser equipment was not provided until November 20, 2020. Faurecia would not have been able to anticipate injuries arising from a Ferrellgas dispenser that did not exist. Therefore, the Supply Agreement can only cover damages related to a propane only incident. That is not the case here. Accordingly, summary judgment on Ferrellgas' claim of indemnity under the Supply Agreement is **granted** in Faurecia's favor.

## IV.   CONCLUSION

For the reasons discussed above, Ferrellgas' Motion for Summary Judgment (Filing No. 143) is **DENIED**. Faurecia's Cross Motion for Summary Judgment (Filing No. 151) is **GRANTED in part and DENIED in part**. Faurecia's motion is **granted** as to Ferrellgas' claims of indemnity under the National Propane Supply Agreement and **denied** in all other respects.

**SO ORDERED.**

Date:   12/18/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John P. Daly, Jr.
GOLITKO & DALY, PC
john@golitkodaly.com

Emily O'Brien Sery
CRUSER, MITCHELL & GASTON, LLP
esery@cmlawfirm.com

John T. Brooks
BAKER, STERCHI, COWDEN, & RICE
jbrooks@bscr-law.com

Keith A. Gaston
CRUSER MITCHELL NOVITZ SANCHEZ & ZIMET, LLP
kgaston@cmlawfirm.com

Michael C. McMullen
BAKER STERCHI COWDEN & RICE, LLC
mmcmullen@bakersterchi.com

Paul S. Penticuff
BAKER STERCHI COWDEN & RICE, L.L.C.
penticuff@bscr-law.com

Rachel O. Webster
CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP
rwebster@cmlawfirm.com

James R Lynch
LYNCH DASKAL EMERY LLP
lynch@lde.law

Tasha Rebecca Roberts
ROBERTS LITAGATION GROUP
troberts@robertslitigation.com