UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHEILA A SKAGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:21-cv-02406-TWP-MJD |
| | ) |
| FERRELLGAS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| FERRELLGAS, INC., | ) |
| | ) |
| Third Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FAURECIA USA HOLDINGS, INC., | ) |
| | ) |
| Third Party Defendant. | ) |
| | ) |
| FAURECIA USA HOLDINGS, INC., | ) |
| | ) |
| Counter Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| FERRELLGAS, INC., | ) |
| | ) |
| Counter Defendant. | ) |

**ENTRY ON FERRELLGAS' MOTION FOR SUMMARY JUDGMENT AGAINST
SKAGGS AND SKAGGS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendant Ferrellgas, Inc.'s ("Ferrellgas") Motion for

Summary Judgment Against Plaintiff (Filing No. 146) and Plaintiff Sheila A. Skaggs' ("Skaggs")

Cross-Motion for Partial Summary Judgment as to Duty Only (Filing No. 149).  Skaggs initiated

this action seeking compensation for damages from Ferrellgas arising from a workplace explosion

that resulted in Skaggs sustaining serious injuries (Filing No. 1-1).  For the following reasons, the

Ferrellgas' Motion is **denied** and Skaggs' Motion for partial summary judgment as to duty is **granted**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the non-moving party for each respective motion. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This case involves multiple parties with varying claims and a plethora of facts. This background section is not intended to provide a comprehensive explanation of all the facts of this case, rather, it only discusses those relevant to these two motions.

### A.     Procedural Background

On August 5, 2021, Skaggs initiated this lawsuit in the Circuit Court of Bartholomew County, Indiana, against Ferrellgas because of injuries she sustained from a liquid propane tank explosion (Filing No. 1-1). Skaggs asserted claims of negligence under tort law and is seeking damages. *Id.* On September 9, 2021, Ferrellgas removed the case to the District Court for the Southern District of Indiana. (Filing No. 1.) On April 29, 2022, Ferrellgas filed a Third-Party Complaint adding Faurecia USA Holdings, Inc. ("Faurecia") to the lawsuit (Filing No. 36). Faurecia then counterclaimed asserting claims of negligence, breach of contract, and declaratory relief (Filing No. 43 at 4-6). On March 31, 2023, Ferrellgas filed a Motion for Summary Judgment against Skaggs (Filing No. 146), and Skaggs responded with her own Partial Motion for Summary Judgment as to duty only (Filing No. 149). Ferrellgas' reply in support of its Motion for Summary Judgment against Skaggs and response in opposition to Skaggs' Motion for Partial Summary Judgment was filed June 2, 2023 (Filing No. 165). Skaggs filed her reply to Ferrellgas' response in opposition on June 14, 2023 (Filing No. 167).

B.     **Factual Background**

Faurecia is an automotive technology supplier, located in Columbus, Indiana (Filing No. 1-1 at 5). Ferrellgas is a nationwide distributor of liquid propane gas.  On July 20, 2016, Faurecia and Ferrellgas entered into an agreement for Ferrellgas to supply propane and related equipment (Filing No. 153-1 at 4). On August 24, 2017, Ferrellgas delivered liquid propane gas dispensing equipment at the Faurecia Gladstone location (Filing No. 153-2 at 3).  The liquid propane tanks were 1000 pounds and equipped with a pump and a hose (Filing No. 147 at 3).

The liquid propane gas dispensing equipment had a safety feature – the pull away emergency shut off valve – that was designed to shut off the flow of liquid propane gas in the event the hose was pulled away by a forklift (Filing No. 147-2 at 6). The emergency shutoff valve is typically initiated when the hose is pulled away from the base.  In the event the emergency shutoff valve is not activated, there is also a manual safety (Filing No. 147-7 at 4, 6, 21).

Along with installing the equipment, Ferrellgas and Faurecia entered into a Dispenser Agreement outlining the terms of the contract.  Under the terms of the Dispenser Agreement, Faurecia (as the Reseller) and Ferrellgas (as the Company) agreed to the following:

> **5. Repairs and Maintenance.** Reseller shall take all reasonable precautions to protect the Equipment from damage and decrease in value. Reseller shall routinely inspect the Equipment and cease use of any Equipment that is defective or in substandard condition and shall immediately notify Company thereof. …
>
> ….
>
> **8. SAFETY.** Company agrees to provide Reseller and Reseller's designated employees safety training materials for the proper handling, storage, and transportation of propane, and to make available to Reseller an adequate supply of the Company's Propane Safety Plan brochure (form OPR-1171 or its replacement). … Reseller shall (i) complete all safety training required by Company and ensure all employees of Reseller who handle or sell propane are properly trained before handling propane (all such training shall be documented); (ii) provide each customer or purchaser of propane the Company's Propane Safety Plan brochure; (iii) perform all propane-related activities in accordance with NFPA 58 and all

federal, state, and local codes; (iv) warn every customer or purchaser of propane by directing attention to the safety warning in the written warnings given to the customer/purchaser; (v) have on each cylinder sold/exchanged to a customer or purchaser of propane the Company's Portable Cylinder Warning Label (form FG4115 or its replacement); and (vi) warn customers or purchasers of propane about the hazards of storing, using, and transporting propane. Reseller specifically covenants to Company that it will not allow anyone to dispense propane who has not been trained to do so safely. …

(Filing No. 147-1). Under the Dispenser Agreement, Ferrellgas was responsible for training select Faurecia employees and those Faurecia employees were then responsible for training the rest of Faurecia's employees on how to use the dispensing equipment (Filing No. 147-2 at 35). The agreement between Ferrellgas and Faurecia was like a train-the-trainer program. *Id.*

Ferrellgas provided training to select Faurecia employees in August 2017. *Id.* at 3. Ruth Means ("Means") and Keith Scheible ("Scheible") were then responsible for training people on the safe refueling procedures Ferrellgas taught them. *Id.* Means and Scheible trained by using the Faurecia forklift training program; this training included a checklist that was reviewed by Ferrellgas prior to distribution. *Id.* at 5. Faurecia reviewed the checklist with Ferrellgas to ensure their employees would be properly trained before handling propane. *Id.* at 26. The checklist did not include training on proper storage of the hose since that was never taught by Ferrellgas. *Id.* at 25. Faurecia also did not provide training on the hose. (Filing No. 147-2 at 25).

Faurecia employee Anthony Jordan Smith ("Smith") was trained in 2017, and received a one-time training in propane dispensing and was provided a checklist to review. (Filing No. 147-7 at 2, 3). He did not receive additional training on dispensing propane in 2018 or 2019. *Id.* at 3. Smith does not recall receiving training from Faurecia on the use of the emergency shutoff valve. *Id.* at 4. He also does not recall receiving training on keeping the hose at the dispenser untangled, or on the use of the emergency shutoff valve at the propane tank. *Id.* at 17, 18.

On November 20, 2020, Smith, was operating a forklift at the Faurecia facility. *Id*. at 12. He pulled the forklift up to the liquid propane gas dispensing station, plugged in the hose, and began filling the forklift's propane cylinder. *Id.* at 12. While fueling the tank, Smith walked away from his forklift leaving it unattended (Filing No. 147-2 at 6). At the time of fueling, the hose was wrapped around the mounting station. Without unplugging the hose that was attached to the forklift, Smith drove the forklift away (Filing No. 147-7 at 14). This caused liquid propane gas to leak from the tank causing a hissing sound. (Filing No. 147-7 at 14). Smith realized propane was leaking from the dispenser, but he continued to pull away to go get a co-worker and planned to come back to the dispenser. *Id*. Smith did not turn off the Emergency Shut-off valve. This "pullaway" event ruptured the hose and released propane.

After Smith pulled away, Skaggs drove her forklift up to the same refueling station where the propane leak was occurring. (Filing No. 147 at 4.) While Skaggs was in the area, an explosion ignited injuring Skaggs and she suffered severe burn injuries as a result of the explosion. *Id.*

Skaggs expert John M. Agosti ("Agosti") opines that "the excessive length of the propane fill hose contributed to the propane leak that resulted in the ignition of fugitive vapors and caused the injuries sustained to Sheila Skaggs" and "the design and safety warnings on the LP filling station cabinet, provided by and serviced by Ferrel[l]gas [were] questionable." (Filing No. 150-2 at 1, 5). Ferrellgas safety expert, Jean L. McDowell ("McDowell") opines the installation of the dispensing equipment by Ferrellgas met all applicable codes and standards, had the training provided by Ferrellgas been followed by Faurecia the incident would have been prevented, and the lack of training and code compliance by Faurecia management directly caused the incident (Filing No. 147-8 at 15).

## II.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "[N]either the mere existence of some alleged factual dispute between the parties

6

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The fact the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. With cross motions, the court is required to "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002).

### III.   DISCUSSION

Summary judgment is generally inappropriate in negligence cases. *Tibbs v. Huber*, 668 N.E.2d 248, 249 (Ind. 1996). Negligence cases are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). Nevertheless, a defendant is entitled to summary judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id.* at 385.

Common law negligence claims require the plaintiff to establish each of the following elements: (1) a duty is owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff that was proximately caused by the defendant's breach. *Id*. Skaggs contends there is an apparent undisputed duty of reasonable care that was owed to her by Ferrellgas.

Ferrellgas contends they did not breach any alleged duty and any actions taken by them were not the proximate cause of Skaggs' injuries. The success of each parties' Motion for Summary Judgment rests upon these arguments. The Court will discuss each in turn.

**A.    Skaggs' Motion for Partial Summary Judgment**

To succeed on her negligence claim, Skaggs must demonstrate Ferrellgas owed her a legal duty. Skaggs does not contend that a statutory duty was owed, but rather that a common law duty existed (Filing No. 149 at 8). Whether a defendant owes a duty to a plaintiff is generally a question of law. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. Ct. App. 1992). Nevertheless, sometimes, the existence of a duty depends upon underlying facts that require resolution by the trier of fact. *Rhodes*, 805 N.E.2d at 386. Summary judgment is particularly appropriate in a negligence case when the court determines a defendant owed no duty to a plaintiff. *Olds v. Noel*, 857 N.E.2d 1041, 1043 (Ind. Ct. App. 2006). Absent a legal duty, there can be no breach, and therefore, no negligence. *Id.* Thus, this issue is appropriate for a motion for partial summary judgment.

The duty of care owed by suppliers of chattel has been well established at common law. Gas companies who participate in the selling and distribution of gas have a duty to "use reasonable care in the distribution of [such] gas" because it is "a dangerous instrumentality." *Palmer & Sons Paving, Inc., v. N. Ind. Pub. Serv. Co.*, 758 N.E.2d 550, 554 (Ind. Ct. App. 2001). A gas company's duty extends to "the public generally, its customers, and third persons who might reasonably be foreseen to be affected by the utility's provision of the service." *S.E. Ind. Natural Gas Co. v. Ingram*, 617 N.E.2d 943, 951 (Ind. Ct. App. 1993); *see also Heritage Operating, L.P. v. Mauck*, 37 N.E.3d 514, 522 (Ind. Ct. App. 2015) (noting it is reasonably foreseeable that a person present on the property where a gas tank is located could be injured by any misuse of undetected defect).

Ferrellgas argues, based on the Dispenser Agreement, that Faurecia was required to notify it of any unsafe equipment and their failure to notify placed responsibility of inspection and maintenance on them (Filing No. 165 at 8).  This argument does not address any duty of care that exists solely based upon the distribution of gas and installation of the related equipment.  As illustrated in *Beta*, one who has complete control over the design and installation of a specific item cannot escape liability merely because someone else controlled the premises at the time of the accident.  *See Beta Steel v. Rust*, 830 N.E.2d 62, 70 (Ind. Ct. App. 2005).  In *Beta*, an employee was injured, and ultimately killed, when they stepped on an electrical control cabinet at work that was designed and installed by a third party.  *Id.* at 71.  The court held that although the employee was injured at the employer's site and the employer controlled how the work was done, the third party still owed a duty to the employee.  *Id.*

The undisputed facts demonstrate that Ferrellgas supplied liquid propane gas to Faurecia and was responsible for the safe installation of the liquid propane equipment.  Ferrellgas had complete control over the design and installation of the 1000-pound liquified propane tank, and refueling station, which was equipped with the hose that Skaggs argues contributed to the propane leak. The undisputed facts also demonstrate that Skaggs was an employee of Faurecia and therefore expected to use the propane equipment provided.  Thus, as a distributor of gas, the Court finds that Ferrellgas owed Skaggs a general duty to use reasonable care in the installation of liquid propane tank equipment.  Whether Ferrellgas owed Skaggs a duty to maintain and repair the liquid propane equipment requires a deeper analysis.

In determining whether a party owes a duty, the court looks to existing relationships. However, "while it is true the trial court must determine if an existing relationship gives rise to a duty, it must also be noted that a factual question may be interwoven with the determination of the

existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact." *Clyde E. Williams & Assocs. v. Boatman*, 375 N.E.2d 1138, 1141 (Ind. Ct. App. 1978). In *Rhodes*, plaintiff and defendant had a contract outlining the relationship between the parties. The court found summary judgment improper, holding a contract cannot establish who owes a duty, rather, duty must be determined by who is in control of the premises when the accident occurs. *Rhodes*, 805 N.E.2d at 385.

To the extent Ferrellgas argues the Dispenser Agreement with Faurecia supplanted its common law tort duty to Skaggs, it cannot do so.  "A person cannot limit his or her tort duty to third parties by contract."  *Rhodes*, 805 N.E.2d at 385.  On one end, the Dispenser Agreement states Faurecia was responsible for inspection and notification of maintenance needs, but on the other end, once notification occurs, Ferrellgas was responsible for repair and maintenance of the equipment (Filing No. 147-1 at ¶ 5).

Ferrellgas contends there was no notification of maintenance needs; but Skaggs contends Ferrellgas was contacted about pull-away incidents two times prior to the incident that injured her. The undisputed evidence supports Skaggs' contention. The designated evidence supports that Ferrellgas was notified about pull-away incidents prior to the incident with Skaggs (Filing No. 150-9 at 7).  Around 2017/2018, a forklift pulled away and pulled the hose loose of the dispenser equipment.  *Id*.  Ferrellgas' employees came to the scene to fix the hose and ensure there were no leaks.  *Id.*  The Court finds this is sufficient notification.  Furthermore, even if Faurecia failed to notify Ferrellgas of any maintenance needs, that would not automatically relieve Ferrellgas of responsibility for injuries to Skaggs as stated above.

It is clear from the contract and designated evidence that Ferrellgas owed a duty of care in the installation of the dispensing equipment, and Ferrellgas was responsible for the maintaining,

inspecting, and repairing of the equipment they provided.  Accordingly, Skaggs' motion for partial summary judgment as to duty only is **granted**.

**B.**   **Ferrellgas' Motion for Summary Judgment**

Ferrellgas moves for summary judgment against Skaggs asserting no duty existed, there was no breach of an alleged duty, and Ferrellgas was not the proximate cause of any injuries Skaggs endured. Having already determined a duty existed; the Court will discuss breach and proximate cause in turn.

**1.**   **Breach**

Ferrellgas asserts summary judgment is appropriate in this matter because there is no genuine dispute as to any breach of duty by Ferrellgas.  Generally, whether a party breached its duty is a question of fact.  *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. Ct. App. 2003).  Moreover, "whether a particular act or omission is a breach of duty is generally a question of fact for the jury. It can only be a question of law where the facts are undisputed and only a single inference can be drawn from those facts."  *Id.*

Courts are hesitant to grant a motion for summary judgment in negligence cases where the designated evidence shows disputed facts, no matter how irrelevant to the harm the evidence may appear. *See Briesacher v. Specialized Restoration and Const., Inc.*, 888 N.E.2d 188, 194 (Ind. Ct. App. 2008).  In *Briesacher*, where an employee injured themselves while laying decking for a roof, after a previously installed rebar came loose, the court found summary judgment for the contractor improper as to breach because the employee's designated evidence claimed the contractor failed to use reasonable care in the installation of the rebar.  *Id*.

Here, Ferrellgas designated evidence demonstrating that the length of the hose was code compliant, Ferrellgas properly trained the designated employees pursuant to the Dispenser

11

Agreement, and Faurecia was responsible for the improper training of its employees that ultimately caused the incident.  On the other hand, Skaggs designated evidence that the hose was too long, the selection of the cabinet and warning signs were inadequate, and Ferrellgas failed to meet its safety obligations under federal and industry standards. Construing all reasonable inferences drawn from the designated evidence, this Court concludes there are genuine disputes of material fact regarding whether Ferrellgas' installation and maintenance of the propane filling station was done with reasonable care, which preclude the entry of summary judgment as to breach.

2.    **Proximate Cause**

There are also genuine issues of material fact regarding the proximate cause of Skaggs' injuries and, potentially, the comparative fault of Ferrellgas and Faurecia. In determining whether an act is a proximate cause of an injury, the courts consider "whether the injury was a natural and probable consequence of the negligent act, which in light of the attending circumstances, could have been reasonably foreseeable or anticipated." *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996). "When determining proximate cause, foreseeability is based on hindsight, and accounts for the circumstances that actually occurred." *Id.* If the harm was a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may still be held liable even though independent agencies intervened between his negligence and the ultimate result.  *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 520 (Ind. Ct. App. 1994). Thus, reasonably foreseeable acts do not break the chain of causation and liability still rests with the original wrongdoer. *Id.* These types of questions concerning proximate cause particularly lend themselves to a decision by jury. *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983).

When the facts of a case do not suggest one clear act as the sole cause of injury, summary judgment is improper.  *See Rhodes*, 805 N.E.2d at 388 (denying defendants' motion for summary when actions of the contractor, employer, and employee could have all equally contributed to plaintiffs' death).  Only where it is clear the injury was not foreseeable under the circumstances and that the imposition of liability upon the defendant would not be justified, may the determination of proximate cause be made as a matter of law.  *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind. Ct. App. 2001).  In *Hassan v. Begley*, where a doctor was sued for failing to order a NG tube for a patient, the court granted summary judgment for the doctor holding improper placement of a NG tube by two different nurses was the superseding cause to the patient's death. *Hassan v. Begley*, 836 N.E.2d 303, 308-09 (Ind. Ct. App. 2005).  The court held it was unforeseeable from the doctor's standpoint that "trained and experienced nurses would misplace a NG tube on two occasions."  *Id.* at 309.

Here, there are several disputed facts material to the inquiry of proximate cause and whether there was any superseding cause. Both parties agree Faurecia employee, Smith, pulled away from the liquid propane gas dispensing station with the hose still attached to the forklift, rupturing the fill hose, allowing liquid propane gas to leak from the tank.  Though, as in *Rhodes*, this Court cannot say with certainty the actions of Faurecia, and its employee Smith, were the only dangers contributing to the incident.

 Ferrellgas argues several causes of Skaggs' harm.  First, Ferrellgas argues that Faurecia was responsible for training all employees thoroughly on the use of refueling stations and key loops.  Second, Ferrellgas argues Faurecia was required to notify Ferrellgas if the hose was unsafe and notify them of any potentially dangerous conditions with the equipment and they did not. Lastly, Ferrellgas argues Smith could have been more attentive, ensuring the hose was

disconnected from the forklift prior to pulling off.  Indeed, the designated evidence supports these arguments.

However, other reasonable inferences may be drawn from the evidence designated by Skaggs, which supports that the training provided by Ferrellgas to Faurecia was insufficient, installation of the hose was unsafe, and Ferrellgas was put on notice of the equipment's potentially dangerous conditions during the previous two pull-away incidents.  Skaggs introduces the affidavit of expert John M. Agosti who opines Ferrellgas took several improper steps when installing and maintaining the liquid propane dispenser equipment.  So, while it is undisputed that Smith driving away with the hose attached to the forklift was a factor in causing the propane leak, a reasonable inference can be made that the actions of Smith, Faurecia, and Ferrellgas all contributed to the propane leak that ultimately led to the explosion which harmed Skaggs.

Furthermore, unlike the circumstances in *Hassan*, the designated evidence here lends itself to multiple inferences regarding foreseeability. *See Hassan*, 836 N.E.2d at 308-09.  Ferrellgas contends the actions by Faurecia employee, Smith, who was improperly trained by Faurecia, were unforeseeable and thus a superseding cause, severing the chain of proximate cause. Based on the evidence designated by Skaggs, Ferrellgas could have foreseen Skaggs being injured from a pull-away incident as they were aware most Faurecia employees were not trained on key loops and two pull-away incidents had happened previously, which they notified Ferrellgas of.

Indiana's appellate court has long held that issues of foreseeability, proximate cause, and the existence of negligence are all matters best resolved by the trier of fact. Ferrellgas moves for summary judgment as to both breach and proximate cause.  Having thoroughly reviewed the designated evidence as it pertains to Ferrellgas' motion, the facts do not provide a clear answer as

14

a matter of law, and a reasonable jury can find for either party on either of these issues, which precludes the entry of summary judgment.

### IV.   CONCLUSION

For the reasons discussed above, Ferrellgas' Motion for Summary Judgment (Filing No. 146) is **DENIED**, and Skaggs' Motion for Partial Summary Judgment on the issue of duty only, (Filing No. 149) is **GRANTED**.

**SO ORDERED.**

Date:   _12/18/2023_

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John P. Daly, Jr.
GOLITKO & DALY, P.C.
john@golitkodaly.com

Emily O'Brien Sery
CRUSER, MITCHELL & GASTON, LLP
esery@cmlawfirm.com

John T. Brooks
BAKER, STERCHI, COWDEN, & RICE
jbrooks@bscr-law.com

Keith A. Gaston
CRUSER MITCHELL NOVITZ SANCHEZ & ZIMET, LLP
kgaston@cmlawfirm.com

Michael C. McMullen
BAKER STERCHI COWDEN & RICE, LLC
mmcmullen@bakersterchi.com

Paul S. Penticuff
BAKER STERCHI COWDEN & RICE, LLC
penticuff@bscr-law.com

Rachel O. Webster
CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP
rwebster@cmlawfirm.com

James R. Lynch
LYNCH DASKAL EMERY LLP
lynch@lde.law

Tasha Rebecca Roberts
ROBERTS LITAGATION GROUP
troberts@robertslitigation.com